UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| R. L. MLAZGAR ASSOCIATES, INC., | Case No. 22-CV-942 (NEB/TNL) |
| Plaintiff, | |
| v. | ORDER ON MOTION TO DISMISS |
| FOCAL POINT, LLC, | |
| Defendant. | |

Defendant Focal Point, LLC terminated its sales representation agreement with Plaintiff R. L. Mlazgar Associates, Inc. and entered into a new sales representation agreement with a third party. Mlazgar sued Focal Point, arguing that Focal Point violated Minnesota law by failing to provide adequate termination notice. Focal Point now moves to dismiss Mlazgar's suit, asserting that Mlazgar did not properly plead subject matter jurisdiction and that Mlazgar failed to state a claim. For the reasons below, the Court denies the motion.

BACKGROUND

I. Factual History

A. *Business Relationship and Sales Representative Agreement*

Mlazgar contracts with various lighting manufacturers to sell lighting products. (ECF No. 1 ("Compl.") ¶ 6.) Focal Point is one such manufacturer. (*Id.* ¶ 7.) In March 2021, Mlazgar and Focal Point entered into a one-year sales representation agreement (the

"SRA"). (*Id.* ¶¶ 8–9.) Under the SRA, "Focal Point appointed Mlazgar as its exclusive sales agent and representative" within a geographic territory (the "Territory"). (*Id.* ¶ 8.) Mlazgar received a commission for soliciting "wholesale orders for Focal Point's Products." (*Id.*) Mlazgar alleges that it "did not distribute, sell, or offer Focal Point's Product to end-users on a retail basis." (*Id.*) The SRA outlines that Mlazgar was responsible for "soliciting business from a specification level and end-user market, such as correctional facilities, education (schools and colleges), field environment, multi-housing, transportation, commercial office, manufacturing, warehouse and distribution and others as appropriate." (ECF No. 10-1 ("SRA") (filed under seal) ¶ 4(a).)

The SRA contains an alternative dispute resolution ("ADR") provision. The provision requires that Mlazgar and Focal Point first discuss among themselves any issues that arise out of the SRA. (*Id.* ¶ 11(a).) If those discussions fail, senior executives from both companies must attempt to resolve the disagreement. (*Id.*) If the executives are unable to agree, the parties must initiate "voluntary, nonbinding mediation conducted . . . by a mutually agreed mediator." (*Id.* ¶ 11(b).) If mediation is unsuccessful, "either party may submit the dispute to binding arbitration." (*Id.* ¶ 11(c).)

### B. Termination and JTH Lighting

In February 2022, Focal Point informed Mlazgar that it was terminating the SRA effective immediately. (Compl. ¶ 10.) It did not explain the reasons for the termination, but it outlined how it would pay commissions going forward. (*Id.* ¶¶ 11–12.)

Mlazgar alleges that before Focal Point terminated the SRA, Focal Point entered into a separate sales representative agreement with JTH Lighting Alliance Wisconsin, Inc. (*Id.* ¶ 13.) Focal Point entered into that agreement presumably to "make JTH Lighting its exclusive sales agent and representative for the Territory." (*Id.*) Mlazgar pleads that during the SRA's term, JTH Lighting solicited sales for Focal Point's products within the Territory, and Focal Point paid JTH Lighting commissions for those sales. (*Id.* ¶ 14.) Mlazgar further contends that Focal Point directed Mlazgar's existing and prospective customers "to place their orders through JTH Lighting and refused to accept and process sale orders received from Mlazgar." (*Id.* ¶ 15.) Lastly, Mlazgar alleges that Focal Point withheld commissions for sales that Mlazgar solicited under the SRA. (*Id.* ¶ 16.)

## II. Procedural History

Mlazgar sues Focal Point under Minnesota law for terminating its sales representation. It alleges that Focal Point violated the Minnesota Termination of Sale Representatives Act ("MTSRA"), Minn. Stat. Section 325E.37, when it terminated the SRA without good cause or ninety-day notice. (Compl. ¶¶ 17–25.) Mlazgar also seeks a declaratory judgment that: (1) Focal Point's termination notice was insufficient to meet

notice and timing requirements under Minnesota law; (2) the SRA is still in effect; and (3) Mlazgar is entitled to commissions for JTH Lighting's sales within the Territory. (*Id.* ¶¶ 26–30; *id.* at 6.) Alternatively, Mlazgar asks for damages for the commissions it would have received if the SRA was in effect. (*Id.* at 6.) In addition, Mlazgar requests costs and attorney's fees. (*Id.*) Focal Point moves to dismiss Mlazgar's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 7.)

## ANALYSIS

### I. Materials Outside the Pleading

As an initial matter, Focal Point asks the Court to consider several documents beyond the complaint when ruling on its motion. The Court generally cannot "consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim . . . ." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). But it may consider "some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Id.* (citation omitted). Focal Point relies on the SRA and several documents surrounding the termination, including correspondence between the parties. The Court will consider the SRA because it is embraced by the pleadings. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). The other documents are not fairly embraced by the pleadings and consideration of them would convert this motion to one for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). The Court declines to do so.

4

## II. Subject Matter Jurisdiction

### A. *Diversity Jurisdiction*

Focal Point alleges that the complaint fails to sufficiently plead diversity jurisdiction in two respects. First, Focal Point argues that Mlazgar fails to adequately state Focal Point's citizenship. Second, Focal Point disputes the amount in controversy.

*Diversity.* Complete diversity requires that no defendant be a citizen of the same state as any plaintiff. *Walker by Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir. 1997). As the party invoking diversity jurisdiction, Mlazgar bears the burden of alleging the citizenship of each party. *Id.* Focal Point is an LLC, and for purposes of diversity jurisdiction, it takes the citizenship of each of its members. *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). The complaint asserts that Focal Point has four members, and it lists the citizenship of each as "Illinois." (Compl. ¶ 3.)

Focal Point takes the pleading requirements for an LLC too far. "[A]n LLC's jurisdictional statement must identify the citizenship of each of its members . . . and, if those members have members, the citizenship of those members as well." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). Focal Point's argument is not that Mlazgar failed to plead citizenship, nor that diversity does not exist—indeed, it conceded at the hearing that its members are citizens of Illinois. Its sole argument—unsupported by any authority—is that the complaint "must allege the actual address of each member." (ECF No. 18 at 2.) Focal Point goes even further, requesting that the complaint be

5

dismissed with prejudice on this ground, requiring the plaintiff to go to state court in a case *with* diversity jurisdiction in which the plaintiff has correctly pled the citizenship of the LLC's members. Rule 8 requires a "short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). It does not require parties to plead a specific address. The motion on this ground is denied.

*Amount in controversy.* Focal Point's second jurisdictional quarrel is with the amount in controversy. On a motion to dismiss, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). "Thus, where the plaintiff is the proponent of diversity jurisdiction, the amount in controversy controls unless the defendant can establish to a legal certainty that the claim is for less than the jurisdictional minimum." *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009) (citing *St. Paul Mercury Indem.*, 303 U.S. at 290).

Mlazgar claims damages for unpaid commissions and lost profits "in excess of $75,000."[1] (Compl. ¶ 4.) Focal Point counters that "[t]his amount exceeds Plaintiff's historic commissions and no other relevant monetary considerations have been asserted."

---

[1] Mlazgar also seeks costs, interest, and attorney's fees. The amount in controversy excludes costs and interest. 28 U.S.C. § 1332(a). Attorney's fees are only available by contract or statute. *McGuire v. State Farm Fire & Cas. Co.*, 108 F. Supp. 3d 680, 686 (D. Minn. 2015) (citing *State of Mo. ex rel. Pemiscot Cnty., Mo. v. W. Sur. Co.*, 51 F.3d 170, 173 (8th Cir. 1995); *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709, 714 (Minn. 1991)). Mlazgar argues the MTSRA permits attorney's fees, but "reasonable attorneys' fees and costs" are awardable only through arbitration. Minn. Stat. § 325E.37, subdiv. 5(b).

(ECF No. 8 at 13.) But Focal Point offers no evidence to establish to a legal certainty that the claim is for less than $75,000. Focal Point's motion on this point is denied.

### B. Alternative Dispute Resolution

The SRA contains an ADR clause that is less than a model of clarity. It states as follows:

> a) The Parties shall attempt to settle amicably by good faith discussions any dispute or disagreement between or among them relating to or arising out of any provision of this Agreement. If representatives of the parties are unable to resolve the dispute or disagreement by such discussions within thirty (30) days, then the dispute or disagreement shall be referred for resolution to the following designated officers or their designee:
>
>     I. For [Defendant]: Division President, Vice President or applicable GM
>    II. For [Plaintiff]: President or Vice President
>
> Each designated officer or their designee shall be of comparable rank and responsibility. The designated officers shall have ten (10) business days to resolve the dispute or disagreement, after which, should there be a failure to agree, the matter shall be referred to mediation in accordance with the provisions of Section 11(b).
>
> b) Mediation. Should the procedure in Section 11(a) fail to bring about a resolution of the dispute, the Parties shall initiate a voluntary, nonbinding mediation conducted in Illinois, by a mutually agreed mediator. . . . While this mediation shall be nonbinding in all respects (except agreements in settlement of the dispute negotiated and mutually agreed by the Parties), each Party agrees that it shall appear when directed by the mediator, be fully prepared to work towards a resolution of the dispute and participate in good faith in the mediation.
>
> c) Arbitration. Should the procedure in Section 11(b) not bring about a resolution of the dispute within six (6) months of the commencement of discussions in 11(a), either party may submit the dispute to binding

>arbitration. . . . Notwithstanding anything to the contrary, either Party shall have the right, without waiving any remedy under this Agreement, to seek from any court of competent jurisdiction (a) equitable relief and (b) any interim or provisional relief that is necessary to protect their rights or property. In case of any conflict between this arbitration clause and the American Arbitration Association's Commercial Arbitration Rules, the terms of this arbitration clause shall control.

(SRA ¶ 11.)

Focal Point moves to dismiss because Mlazgar failed to take the first two steps—holding a senior executive meeting and attempting mediation—and instead proceeded straight to litigation. This argument raises separate issues: whether the ADR provision applies to this litigation, and if it does, whether Mlazgar's suit is barred because it failed to follow the provision.[2]

*Applicability of the SRA.* Mlazgar's first argument against application of the ADR provision, though made only briefly, is that its claims do not involve a dispute under the contract. Instead, Mlazgar asserts that the complaint alleges only a violation of the MTSRA. A fair reading of the SRA and the complaint leads the Court to reject this argument. The SRA's ADR provision applies to disputes "relating to or arising out of any provision of this Agreement." (*Id.* ¶ 11(a).) The complaint references the SRA repeatedly, seeks commissions under the SRA, and alleges that the SRA is a "sales representative

---

[2] The parties discuss at length another issue: whether the SRA's ADR provision is unenforceable under the MTSRA. This issue is made irrelevant by the Court's conclusions, and the Court need not reach it.

8

agreement" under the MTSRA. (*E.g.*, Compl. ¶¶ 8–11, 19; *id.* at 6.) It appears that this dispute at least "relates to" the SRA, if not "arises out of" it, and therefore the Court cannot ignore the contract's ADR provision.

*ADR provision.* Mlazgar admits that it did not follow the ADR process outlined in the SRA but contends that it should be excused from doing so because the process is not mandatory. With respect to the arbitration provision, Mlazgar is correct. By its plain language, the provision provides that either party "*may* submit the dispute to binding arbitration." (*Id.* ¶ 11(c) (emphasis added).)

The mediation provision, however, presents a taller hurdle. It provides that if informal discussions fail, "the Parties *shall* initiate a voluntary, nonbinding mediation." (*Id.* ¶ 11(b) (emphasis added).) Focal Point argues that the Court "should thus exercise its discretion and dismiss the Complaint pending compliances with the [SRA's] ADR requirements." (ECF No. 8 at 15.) Although the mediation provision appears to be mandatory, whether it is a condition precedent to litigation is a different question.

"The meaning of a contract is to be ascertained from the writing alone, if possible, the duty of the court being to declare the meaning of what is written in the instrument, not what was intended to be written." *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 215 N.W.2d 473, 476 (Minn. 1974) (citation omitted). A contractual condition precedent must be expressly and unambiguously stated. *See id.* (holding that the phrase "assuming that" created a condition precedent); *Aslakson v. Home Sav. Ass'n*, 416 N.W.2d 786, 789

9

(Minn. Ct. App. 1987) (same with "contingent upon"); *451 Corp. v. Pension Sys. for Policemen & Firemen*, 310 N.W.2d 922, 923–24 (Minn. 1981) (same with "subject to"). This clarity is "nowhere more important than in construing a provision that would divest a party of the right to have a court hear its claims." *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 298 F. Supp. 2d 1, 4 (D.D.C. 2002) (cleaned up, citation omitted). Here, the ADR provision provides that the senior executive meeting and mediation must occur before *voluntary arbitration*, not before a lawsuit. Also, the mediation provision uses mandatory and non-mandatory language, stating that the parties "*shall* initiate a *voluntary*" mediation. (SRA ¶ 11(b) (emphasis added).) The provision therefore does not unambiguously require the executive meeting and mediation before a party sues. Focal Point's motion on this point is denied.

### III.  Failure to State a Claim

The final issue to address is substantive, not procedural. Focal Point maintains that the MTSRA does not apply to Mlazgar because Mlazgar is not a sales representative as defined by the statute. The Court looks first to the motion to dismiss standard, then to the statute.

*Standard.* To survive a motion to dismiss under Rule 12(b)(6), "[t]he complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage in the litigation, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). Factual allegations in the complaint need not be detailed but "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

*Sales representative under MTSRA.* The MTSRA applies to Minnesota sales representatives. Minn. Stat. § 325E.37, subdiv. 6(a)(1). A "sales representative" is "a person who contracts with a principal to solicit wholesale orders[3] and who is compensated, in whole or in part, by commission." *Id.*, subdiv. 1(d). A "sales representative" does not include someone who "distributes, sells, or offers the goods, other than samples, to end users, at retail." *Id.*, subdiv. (d)(4).

Focal Point disputes the allegations that Mlazgar "solicit[ed] wholesale orders for Focal Point's Products" and "did not distribute, sell, or offer Focal Point's Product to end-users on a retail basis." (Compl. ¶ 8.) It asserts these statements are impermissibly conclusory. Focal Point also contends the SRA contradicts Mlazgar's allegations, arguing that Mlazgar was required to "solicit[] business from a specification level and end-user

---

[3] "Wholesale orders means the solicitation of orders for goods by persons in the distribution chain for ultimate sale at retail. . . ." Minn. Stat. § 325E.37, subdiv. 1(f) (quotation marks omitted).

11

market . . . ." (SRA ¶ 4(a).) As examples of the market, the SRA lists "correctional facilities, education (schools and colleges), field environment, multi-housing, transportation, commercial office, manufacturing, warehouse and distribution and others as appropriate." (*Id.*)

Under the motion to dismiss standard, Mlazgar has adequately alleged that he is a sales representative covered by the MTSRA. It may well be that discovery reveals otherwise, but Mlagzar's allegations about soliciting wholesale orders are sufficient to withstand a motion to dismiss. Focal Point's motion on this point is denied.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Focal Point, L.L.C.'s motion to dismiss (ECF No. 7) is DENIED.

Dated: August 25, 2022　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　s/Nancy E. Brasel
　　　　　　　　　　　　　　　　　　　　Nancy E. Brasel
　　　　　　　　　　　　　　　　　　　　United States District Judge